UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC L.,[1] | ) | CIVIL ACTION NO. 4:22-CV-2045 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| MARTIN O'MALLEY,[2] | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

Eric L. ("Plaintiff") is an adult who lives in the Middle District of Pennsylvania. He seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before us upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the

---

[1] The Judicial Conference of the United States's Committee on Court Administration and Case Management recommends that federal courts refer to social security plaintiffs by their first name and last initial. We adopt this recommendation.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. He is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g).

parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, we find the Commissioner's final decision is supported by substantial evidence. Accordingly, the Commissioner's final decision will be AFFIRMED.

## II.    BACKGROUND AND PROCEDURAL HISTORY

On August 2, 2020, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 18; Doc. 9-2, p. 19). In this application, Plaintiff alleged he became disabled on June 30, 2019, when he was forty-one years old, due to the following conditions: keratoconus eye disorder, arthritis, herniated discs in back, bipolar disorder, spinal stenosis, limited ROM post right shoulder cuff injury and surgery, obesity, and right elbows lateral epicondylitis post 2 surgeries. (Admin. Tr. 18, 37, 265; Doc. 9-2, pp. 19, 38, Doc. 9-6, p. 5). Plaintiff alleges that the combination of these conditions affects his ability to squat, bend, stand, walk, sit, kneel, climb stairs, see, complete tasks, concentrate, and get along with others. (Admin. Tr. 279; Doc. 9-6, p. 19). Plaintiff has a high school education. (Admin. Tr. 266; Doc. 9-6, p. 6). Before the onset of his impairments, Plaintiff worked as a bottle inspector, bottle packer, fixer, and a weigher. (Admin. Tr. 36; Doc. 9-2, p. 38).

On April 22, 2021, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 18; Doc. 9-2, p. 19). On August 27, 2021, Plaintiff's application was denied on reconsideration. *Id.* On September 22, 2021, Plaintiff requested an administrative hearing. *Id.*

On April 8, 2022, Plaintiff and his counsel participated in a hearing before Administrative Law Judge Frank Barletta (the "ALJ"). *Id.* On June 2, 2022, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 38; Doc. 9-2, p. 39). On November 11, 2022, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 229; Doc. 9-4, p. 104).

On October 24, 2022, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 9-2, p. 2).

On December 22, 2022, Plaintiff filed his complaint in this Court. (Doc. 1). In the complaint, Plaintiff alleges that substantial evidence does not support the ALJ's decision denying his application for benefits, and that the decision contains errors of law. *Id.* As relief, Plaintiff requests that the court award benefits, or in the alternative, remand this matter for a new administrative hearing. (Doc. 1).

On February 24, 2024, the Commissioner filed an answer. (Doc. 8). In the answer, the Commissioner maintains that the decision denying Plaintiff's

application is correct and is supported by substantial evidence. *Id*. Along with his answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 9).

Plaintiff's Brief (Doc. 10), the Commissioner's Brief (Doc. 11), and Plaintiff's Reply (Doc. 12) have been filed. This matter is now ready to decide.

## III. LEGAL STANDARDS

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals, including the standard for substantial evidence review, and the guidelines for the ALJ's application of the five-step sequential evaluation process. We will also discuss the factors an ALJ must consider when evaluating the persuasiveness of medical opinions, and the standard this Court applies to determine whether an ALJ's decision is well explained enough to permit judicial review.

### A. SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[3] Substantial evidence "does not mean a large or

---

[3] *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[5] A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict in the record.[6] In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the Commissioner's final decision] from being supported by substantial evidence."[7]

Plaintiff seeks review under sentence four of 42 U.S.C. § 405(g). When determining if the Commissioner's decision is supported by substantial evidence under sentence four of 42 U.S.C. § 405(g), the court may consider any evidence that was in the record that was made before the ALJ.[8]

---

[4] *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).

[5] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[6] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

[7] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[8] *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) ("when the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand based on the record that was made before the ALJ (Sentence Four review)."). The claimant and Commissioner are obligated to support each contention in their arguments with specific reference to the record relied upon. L.R. 83.40.4; *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("parties . . . bear the responsibility to comb the record and point the

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[9]

To determine whether substantial evidence supports the final decision, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[10] In doing so, however, the court is enjoined to refrain from

---

Court to the facts that support their arguments."); *Ciongoli v. Comm'r of Soc. Sec.*, No. 15-7449, 2016 WL 6821082 (D.N.J. Nov. 16, 2016) (noting that it is not the Court's role to comb the record hunting for evidence that the ALJ overlooked).

[9] *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019).

[10] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of

trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[11]

Furthermore, meaningful review cannot occur unless the final decision is adequately explained. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[12]

## B. STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

---

substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[11] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

[12] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

continuous period of not less than 12 months."[13] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[14] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.[15]

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[16] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[17]

---

[13] 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).
[14] 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).
[15] 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).
[16] 20 C.F.R. § 404.1520(a).
[17] 20 C.F.R. § 404.1520(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[18] In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[19]

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work.[20] Once this burden has been met, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.[21]

## C.   STANDARDS GOVERNING AN ALJ'S EVALUATION OF MEDICAL OPINIONS AND PRIOR ADMINISTRATIVE MEDICAL FINDINGS

When deciding whether to grant or deny an application for benefits, an ALJ is required to consider "all evidence" in the case record.[22] Social Security case

---

[18] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1).

[19] 20 C.F.R. § 404.1545(a)(2).

[20] 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064.

[21] 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

[22] 20 C.F.R. § 404.1520(a)(3).

records often include medical opinions and prior administrative medical findings.[23] The framework governing an ALJ's consideration of medical opinions and prior administrative medical findings is set forth in 20 C.F.R. § 404.1520c.

Under this regulation, an ALJ will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."[24] Instead, the ALJ assesses an opinion or finding's persuasiveness. However, when medical opinions and prior administrative medical findings conflict, "the ALJ is not only entitled but required to choose between them."[25] That choice, is guided by the ALJ's consideration of the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including the length of treatment, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship); and (4) specialization.[26] The ALJ may also consider any other factors that "tend to support or contradict" a medical opinion or prior administrative medical finding, including but not limited

---

[23] The Commissioner's regulations also carefully define these types of evidence. 20 C.F.R. § 404.1502(d) (defining medical source); 20 C.F.R. § 404.1513(a)(2) (defining the types of statements that are medical opinions); 20 C.F.R. § 404.1513(a)(5) (defining prior administrative medical finding).

[24] 20 C.F.R. § 404.1520c(a).

[25] *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

[26] 20 C.F.R. § 404.1520c(c).

to: a source's familiarity with the other evidence in the claim, his or her understanding of the disability program and policies, and whether new evidence received after the opinion or finding was issued makes the opinion or finding more or less persuasive.[27] Although all relevant factors must be considered, supportability and consistency are the most important factors when evaluating an opinion or finding's persuasiveness.[28]

The ALJ also has an obligation to articulate these findings in a particular way, and with enough specificity so that a reviewing court may know the basis for the decision.[29] Remand may be required where an ALJ's findings are not adequately articulated, or where substantial probative evidence was disregarded for improper reasons.[30]

### D. GENERAL PRINCIPLES GOVERNING AN ALJ'S OBLIGATION TO PROVIDE SUPPORTING EXPLANATIONS

Most of Plaintiff's arguments require us to consider whether the ALJ adequately explained his evaluation of various aspects of his decision. In doing so

---

[27] 20 C.F.R. § 404.1520c(c).

[28] 20 C.F.R. § 404.1520c(a).

[29] 20 C.F.R. § 404.1520c(b); *Cotter*, 642 F.2d at 705.

[30] *Plummer*, 186 F.3d at 429 (explaining that "an ALJ is not free to employ her own expertise against that of a physician who presents competent medical evidence." The ALJ may "choose whom to credit, but 'cannot reject evidence for no reason or for the wrong reason.'") (quoting *Mason*, 994 F.2d at 1066).

we apply a familiar standard. Courts acknowledge that the records in social security cases are voluminous, and as such "there is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record."[31] Instead, an ALJ's findings should,

> [B]e as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. This is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the [Commissioner's final decision] is supported by substantial evidence.[32]

Substantial evidence does not support an ALJ's decision where there is a significant disparity between what is in the record itself and the ALJ's synopsis of it because the Court "cannot tell if significant probative evidence was not credited or was simply ignored."[33]

When determining whether a decision is adequately explained, it is also important to remember that the decision itself need not adhere to a particular format, so long as it reflects that there was sufficient development of the record and permits

---

[31] *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

[32] *Cotter*, 642 F.2d at 705.

[33] *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("the ALJ describes four diagnostic tests and five treatment notes. Yet our review of the record reflects over 115 pages of relevant, probative treatment notes from Drs. Zaslow and Karpin detailing Fargnoli's medical condition and progress.").

meaningful review when read as a whole.[34] For example, if an ALJ discusses and analyzes evidence in a section of the decision that appears before determining the persuasiveness of the medical opinions, he is not required to repeat the analysis for the sake of elaborating on his articulation of the persuasiveness of a medical opinion so long as the Court is satisfied that the ALJ was sufficiently familiar with the medical evidence to have evaluated whether it supported the medical opinion.[35]

## IV. DISCUSSION

Plaintiff raises the following issues in his brief:

(1)     Substantial evidence does not support the ALJ's evaluation of Dr. Kozicki's medical opinion outlining limitations inconsistent with the performance of sedentary work.

(2)     The ALJ did not discuss CRNP Cywinski's opinion that Plaintiff had limited use of his right upper extremity.

(3)     Substantial evidence does not support the ALJ's RFC assessment because the limitations Doctor Kozicki and CRNP Cywinski outlined were excluded.

Before turning to the merits of Plaintiff's arguments, we will summarize the ALJ's findings in his decision.

---

[34] *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (affirming an ALJ's decision where the step three explanation was deficient, but the decision as a whole illustrated that the ALJ considered the appropriate factors).

[35] *See Serrano v. Kijakazi*, No. CV 20-3985, 2021 WL 4477137, at *4 (E.D. Pa. Sept. 30, 2021).

### A.    THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his June 2022 decision, the ALJ found that Plaintiff will meet the insured status requirement of Title II of the Social Security Act through December 31, 2024. (Admin. Tr. 21; Doc. 9-2, p. 22). Then, Plaintiff's application was evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between June 30, 2019 (Plaintiff's alleged onset date) and June 2, 2022 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 21; Doc. 9-2, p. 22).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: right elbow lateral epicondylitis, right rotator cuff injury, spondylosis of lumbosacral and cervical region, radiculopathy, herniated discs, spinal stenosis, osteoarthritis, obesity, keratoconus, high astigmatism, bipolar disorder with psychotic features, major depressive disorder, and post-traumatic stress disorder. *Id.* The ALJ also identified the following impairments as medically determinable but non-severe: hyperlipidemia, and essential hypertension. *Id.*

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled

the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(Admin. Tr. 21-28; Doc. 9-2, pp. 22-29).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ

found that, during the relevant period, Plaintiff retained the RFC to engage in

sedentary work as defined in 20 C.F.R. § 404.1567(a) except he could:

> occasionally balance, stoop, kneel, crouch, crawl, or climb ramps, stairs, ladders, ropes or scaffolds. He could frequently reach, handle, and finger with his dominant right hand. He must avoid all exposure to hazards such as unprotected heights and dangerous moving machinery. He is limited to work involving only simple, routine tasks, but not at a production rate pace. He is limited to no more than simple work-related decision. He could tolerate no more than occasional changes in the work setting. He is limited to occasional interaction with supervisors, coworkers, and the public.

(Admin. Tr. 29; Doc. 9-2, p. 30).

At step four, the ALJ found that, during the relevant period, Plaintiff could

not engage in his past relevant work. (Admin. Tr. 36; Doc. 9-2, p. 37).

At step five, the ALJ found that, considering Plaintiff's age, education and

work experience, Plaintiff could engage in other work that existed in the national

economy. (Admin. Tr. 37-38; Doc. 9-2, pp. 38-39). To support his conclusion, the

ALJ relied on testimony given by a vocational expert during Plaintiff's

administrative hearing and cited the following three (3) representative occupations:

folder, DOT #685.687-014; inspector, DOT #673.685-042; and document clerk, DOT #249.587-018. (Admin. Tr. 37-38; Doc. 9-2, pp. 38-39).

### B. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S FINDING THAT DR. KOZICKI'S MEDICAL OPINION WAS NOT PERSUASIVE

At step two, the ALJ acknowledged that Plaintiff has spondylosis of the lumbosacral and cervical region of his spine, spinal stenosis, and herniated discs. He also experiences radiculopathy. Plaintiff testified that the pain these conditions cause is severe, wakes him up at night, and negatively affects his mood and ability to interact with others. He also testified that it significantly impairs his ability to walk (cannot walk more than one block) stand (cannot stand for more than fifteen minutes) and sit (cannot sit for more than 10 minutes). He reported that, at home, he takes multiple breaks while trying to complete household chores.

On March 27, 2022, Plaintiff's primary care physician, Dr. Matt Kozicki, completed a fill-in-the-blank questionnaire about Plaintiff's ability to perform physical work-related activities. (Admin. Tr. 662-63; Doc. 9-7, pp. 307-08). In response to the questions, Dr. Kozicki assessed Plaintiff could: frequently (from 1/3 to 2/3 of the workday) lift and carry less than ten pounds; stand and walk (with normal breaks) less than two hours per workday; sit (with normal breaks) less than two hours per workday; and never twist, stoop, crouch, climb stairs, climb ladders, or push/pull. *Id.* Dr. Kozicki also reported that Plaintiff would need the opportunity

to shift positions (from sitting to standing/walking) at will and would sometimes need to lie down at unpredictable intervals. *Id.* He estimated these breaks would happen every two hours. *Id.*

> To support these limitations, Dr. Kozicki explained:
>
> Back pain and tenderness in all positions.
>
> Frequent position changes helps very mildly.
>
> Patient has done everything in his power to help himself with no improvement. Has tried PT, injections, medications to no avail. Has been a perfect patient, following all instructions. I just do not think he can work to gain any meaningful income due to his pain.

*Id.* Dr. Kozicki also suggested that Plaintiff avoid extreme temperatures as they could aggravate Plaintiff's pain. He estimated that Plaintiff would be absent from work more than three times per month due to his impairments. *Id.*

> The ALJ found that Dr. Kozicki's opinion was not persuasive because:
>
> This is simply not consistent with the longitudinal record nor supported by Dr. Kozicki's own treatment notes. Dr. Kozicki's record[s] show that his gait and station were normal, he used no assistive devices, and he had no motor, sensory or reflex deficits (Exhibit 19F). The undersigned finds the claimant could perform sedentary work as outlined in the RFC above.

(Admin. Tr. 35; Doc. 9-2, p. 36). The ALJ concluded Plaintiff could engage in "sedentary" work, and therefore would be able to stand and/or walk for up to two hours per workday (as opposed to Dr. Kozicki's assessment of less than two hours),

sit for up to six hours per workday (as opposed to Dr. Kozicki's assessment that Plaintiff could sit for less than two hours), and occasionally lift objects weighing up to ten pounds.[36]

Plaintiff argues that substantial evidence does not support the ALJ's evaluation of Dr. Kozicki's opinion for three reasons: (1) the ALJ did not adequately articulate his evaluation of the supportability factor; (2) the ALJ did not adequately articulate his evaluation of the consistency factor; and (3) the ALJ improperly relied on his own lay judgment to reject Dr. Kozicki's opinion.

### 1.    Whether Substantial Evidence Supports the ALJ's Consideration of the Supportability Factor

Plaintiff argues that substantial evidence does not support the ALJ's consideration of the supportability factor for two reasons: (1) the ALJ relied on one examination to conclude that Dr. Kozicki's opinions were not supported by his

---

[36] Multiple sources assessed Plaintiff's capacity for physical work-related activities during the administrative review process and reached a range of conclusions. In October 2020, consultative examiner Tara Cywinski, CRNP assessed limitations consistent with the performance of a range of light and sedentary work. (Admin. Tr. 485-490; Doc. 9-7, pp. 130-135). In February 2021, state agency consultant Judy Kleppel, M.D., assessed limitations consistent with the performance of "light" work. (Admin. Tr. 88- 91; Doc. 9-3, pp. 13-16). In August 2021, state agency consultant Jennifer Bantley Wilson, D.O., assessed limitations consistent with the performance of "light" work. (Admin. Tr. 113-117; Doc. 9-3, pp. 38-42). Dr. Kozicki's assessment of Plaintiff's ability to sit, stand, and walk is the most limiting. The ALJ's RFC assessment appears to fall within the range offered by the various medical professionals.

treatment records but did not discuss Dr. Kozicki's other records; and (2) the ALJ did not discuss the explanations Dr. Kozicki offered in his medical opinion.

In response, the Commissioner argues that the ALJ considered all of Dr. Kozicki's treatment records when he evaluated the supportability of Dr. Kozicki's opinion. He does not address the second issue Plaintiff raised.

A medical opinion's "supportability" is evaluated based on the amount of relevant evidence and explanations a medical source provides to support it.[37] The more relevant the objective medical evidence and supporting explanations are, the more persuasive the medical opinion will be found.[38] The Commissioner's regulations require that an ALJ not only consider, but also articulate *how* he considered, the supportability of a medical opinion.[39] We will evaluate Plaintiff's challenge to the ALJ's articulation of this assessment based on the principles set forth in Section III(D) of this memorandum.

Remand is not required for an ALJ's failure to discuss every treatment record, but may be warranted where there is a significant disparity between the amount of evidence in the record, and the ALJ's discussion.[40] Further, remand may not be

---

[37] 20 C.F.R. § 404.1520c(c)(1).

[38] *Id.*

[39] 20 C.F.R. § 404.1520c(b)(2).

[40] *Fargnoli*, 247 F.3d at 42.

required where an ALJ failed to discuss a particular piece of relevant evidence in his persuasiveness analysis, if the ALJ discussed that evidence elsewhere in his decision.[41] Here, Plaintiff argues that the ALJ ignored relevant and probative treatment records from Dr. Kozicki that support his medical opinion and contradict the ALJ's evaluation of its persuasiveness. The record in this case, however, includes only three examination notes from Dr. Kozicki.[42] These examinations took place on April 28, 2021, October 27, 2021, and February 10, 2022.[43] During one of the examinations Dr. Kozicki noted "lumbar tenderness" on examination, but none was noted during two of the examinations. He noted a normal gait and station, no motor, sensory or reflex deficits during all three examinations. No use of an assistive device was documented during any of the three examinations. The treatment records at issue are virtually identical. Thus, there is no significant disparity between the ALJ's summary of Dr. Kozicki's records and the decision itself. Moreover, review of the ALJ's decision illustrates that the ALJ was sufficiently familiar with the medical evidence to have evaluated whether it supports Dr. Kozicki's opinion. For example, Plaintiff suggests that "[h]ad the ALJ considered earlier treatment notes from Dr.

---

[41] *Serrano*, 2021 WL 4477137, at *4.

[42] (Admin. Tr. 524-39; Doc. 9-7, pp. 169-184); (Admin. Tr. 640-653; Doc. 9-7, pp. 285-298); (Admin. Tr. 654-661; Doc. 9-7, pp. 299-306).

[43] (Admin. Tr. 524-39; Doc. 9-7, pp. 169-184); (Admin. Tr. 640-653; Doc. 9-7, pp. 285-298); (Admin. Tr. 654-661; Doc. 9-7, pp. 299-306).

Kozicki, he would have understood that [Plaintiff] continued to experience chronic low back pain with no relief from ablation." (Doc. 10, p. 10). The ALJ's decision, however, illustrates that he considered this information.[44] Accordingly, we are not persuaded that the ALJ's failure to discuss two out of three treatment records during his analysis of Dr. Kozicki's medical opinion undermines his conclusion or requires remand.

Courts have remanded where an ALJ failed to address a medical source's supporting explanation in his persuasiveness analysis, while others have found this mistake to be harmless error.[45] Reading these decisions, the central inquiry is whether the decision as a whole permits meaningful review. If it does not, remand

---

[44] (Admin. Tr. 31, p. 32) ("He reported that he had two previous ablations done and noted they helped for 6-12 months. The record notes he received some medial branch blocks, but then stated to Dr. Kozicki in February 2022, that he had to stop treatment with pain management due to owing that office a lot of money.").

[45] *Compare Rodney Edward G. v. O'Malley*, No. 23-CV-3456, 2024 WL 3654017, at *7-8 (E.D. Pa. Aug. 5, 2024) (remanding an ALJ's decision that did not discuss a source's treating explanations but did discuss records because no reasonable mind could conclude the ALJ's analysis was supported by substantial evidence) *with Caitlin S. v. Comm'r of Soc. Sec.*, No 1:21-CV-00892-TPK, 2024 WL 2873390 (W.D.N.Y. June 7, 2024) (finding that an ALJ's failure to analyze a source's supporting explanations was harmless error where the ALJ engaged in a thorough review of the medical evidence, and the Court was satisfied based on its review of the decision as a whole that the ALJ considered whether this evidence supported the medical source's opinion).

is required. Plaintiff argues that the ALJ failed to discuss the explanations Dr. Kozicki provided to support his medical opinion. Plaintiff is correct that the ALJ did not discuss Dr. Kozicki's explanation that certain exertional limitations were required to mitigate Plaintiff's debilitating pain. This is an error. We are not, however, persuaded that remand for this error is required in this case. As discussed above, the ALJ's decision clearly illustrates the basis for his conclusion and demonstrates that the ALJ considered the appropriate factors. The explanation at issue suggests that the extremely restrictive sitting, standing, and walking limitations imposed were meant to help mitigate Plaintiff's back pain. (Admin. Tr. 662; Doc. 9-7, p. 307). That severe pain, however, was not clearly documented in Dr. Kozicki's treatment records. Although Plaintiff complained of pain, it was only detected by Dr. Kozicki on physical examination once. Other signs that may corroborate severe pain, such as an abnormal gait or reduced range of motion were also absent from Dr. Kozicki's records. Under these circumstances, we find that the lack of discussion is harmless error and does not require remand.

Accordingly, we find that, although the ALJ's supportability analysis is sparse, so is the supporting evidence he was supposed to discuss. Review of the ALJ's decision as a whole reassures us that the ALJ considered the relevant factors, and that substantial evidence supports his persuasiveness analysis.

### 2.    Whether the ALJ Adequately Articulated His Consideration of the Consistency Factor

Plaintiff argues that substantial evidence does not support the ALJ's consideration of the consistency factor because he did not discuss one treatment record from Yasin N. Kahn, M.D. (Plaintiff's pain management specialist) when evaluating Dr. Kozicki's medical opinion. The Commissioner argues that the ALJ considered this record. In reply, Plaintiff argues that the Commissioner "overlooks the fact that the ALJ's discussion of these records occurred elsewhere in his decision, and not in his consideration of the persuasiveness of Dr. Kozicki's opinion." (Doc. 12, p. 2).

A medical opinion's "consistency" is evaluated based on the evidence provided by other medical and nonmedical sources.[46] The more consistent the limitations it contains are with this evidence, the more persuasive it will be found.[47] The Commissioner's regulations require that an ALJ not only consider, but also articulate *how* he considered, the consistency of a medical opinion.[48] We will evaluate Plaintiff's challenge to the ALJ's articulation of this assessment based on the principles set forth in Section III(D) of this Memorandum.

---

[46] 20 C.F.R. § 404.1520c(c)(2).

[47] *Id.*

[48] 20 C.F.R. § 404.1520c(b)(2).

Page 23 of 37

Courts generally hold that an ALJ's decision need not adhere to a particular format to be upheld. Applying this principle to the persuasiveness analysis, courts have found an ALJ is not "required to repeat this information for the sake of elaborating on [their] findings of persuasiveness," where it was discussed elsewhere in the decision, and that discussion is sufficient to allow meaningful judicial review of their conclusions.[49] Plaintiff argues, and our review of this treatment record confirms, that on June 15, 2021, Dr. Kahn observed that Plaintiff had "decreased lumbar lordosis, tender bilateral lumbar facet joints, very limited range of motion, positive straight leg raising on the right, bilateral weakness, and slow but stable antalgic gait." (Doc. 10, p. 10); (Admin. Tr. 624-626; Doc. 9-7, pp. 269-271). These observations support the presence of significant pain and are consistent with imposing some degree of limitation in sitting, standing, and walking.[50] The ALJ did not discuss these findings when he articulated his evaluation of the consistency factor for Dr. Kozicki's medical opinion, and instead only generally observed that Dr. Kozicki's medical opinion was not consistent with the "longitudinal record."

---

[49] *Serrano*, 2021 WL 4477137, at *4.

[50] We note, however, that pain is subjective, and this record is silent as to Plaintiff's ability to sit or stand and does not suggest the degree to which this pain limits Plaintiff's ability to walk. Thus, it is as consistent with the ALJ's RFC assessment as it is with Dr. Kozicki's medical opinion.

(Admin. Tr. 35; Doc. 9-2, p. 36). The ALJ did, however, discuss most of these findings and indicate he considered all of Dr. Kahn's treatment records, in a different paragraph of his decision. We have no reason to doubt him. In that paragraph, the ALJ wrote:

> He also has complaints of back pain and is diagnosed with spondylosis of lumbosacral and cervical region, radiculopathy, herniated discs, and spinal stenosis (Exhibit 17F; 19F). He was treating with pain management and noted his pain was a shooting stabbing pain, but it was radiating down his right lower extremity with numbness and tingling, pins and needles in the lower extremity. At his visit in May 2021, he was noted to be using a cane to walk, and that he was in moderate distress with pain; however, subsequent visits show he did not have a cane to walk (Exhibit 17F/p. 1-13). He reported that he had two previous ablations done and noted they helped for 6-12 months. The record notes he received some medial branch blocks, but then stated to Dr. Kozicki in February 2022, that he had to stop treatment with pain management due to owing that office a lot of money (Exhibit 17F/p. 2; 19F/p. 3). Dr. Kozicki noted at that February 2022 visit that his gait and station were normal, he was using no assistive devices, and he had no motor, sensory or reflex deficits (Exhibit 19F/p. 3-4).

(Admin. Tr. 31; Doc. 9-2, p. 32). Dr. Kahn's treatment records appear at exhibit 17F of the administrative record. The June 15, 2021 record appears at pages 4 through 6. Reviewing this paragraph of the ALJ's decision, we find that he clearly considered Dr. Kahn's records, including the June 15, 2021 examination note. The ALJ acknowledged that outside of these 2021 visits to Dr. Kahn, Plaintiff was observed to walk with a normal gait, and few observable signs of severe pain were noted. Reconciling this discussion with his assessment of the consistency factor and his

assessment of the persuasiveness of Dr. Kozicki's opinion, we are satisfied that he adequately evaluated this record in the context of his persuasiveness analysis and find that substantial evidence supports the ALJ's conclusion that Dr. Kozicki's opinion was not consistent with the longitudinal record.

Accordingly, we find that substantial evidence supports this aspect of the ALJ's analysis.

### 3. Whether the ALJ Rejected All Medical Opinions and Relied on his own Lay Evaluation to Formulate the RFC Assessment

Last, Plaintiff argues:

> In short, the medical records supported and were consistent with Dr. Kozicki's opinion, and he was certainly in a better position to understand the significance of their findings than the ALJ. Mr. Labar suffers from chronic pain, and is unable to perform even sedentary work on a full-time basis. The Third Circuit has repeatedly held that "an ALJ is not free to set his own expertise against that of physicians who present competent medical evidence." *Wallace v. Sec'y of HHS*, 722 F.2d 1150, 1155 (3d Cir. 1983); *Van Horn v. Schweiker*, 717 F.2d 871, 874 (3d Cir. 1983); *Fowler v. Califano*, 596 F.2d 600, 603 (3d Cir. 1979); *see also Kelly v. Railroad Retirement Board*, 625 F.2d 486, 494 (3d Cir. 1980) ("An ALJ may not reject professional medical evidence on the basis of his own observation"). In this case, the ALJ has rejected Dr. Kozicki's opinion based on his lay judgment about the medical records, which in fact support and are consistent with that opinion, contrary to the ALJ's conclusions. An ALJ "cannot reject evidence for no reason or the wrong reason." *Mason*, 994 F.2d at 1066. The ALJ's rejection of Dr. Kozicki's opinion for erroneous or nonexistent reasons violated the regulations and the law of this circuit, and his decision should be reversed as a result.

(Doc. 10, pp. 12-13).

Plaintiff is correct that an ALJ is not permitted to reject a medical opinion based on his own lay evaluation of the record. We are not, however, persuaded that occurred in this case. In his argument, Plaintiff relies on *Wallace v. Sec'y of HHS*, *Van Horn v. Schweiker*, and *Fowler v. Califano* to support his argument that the ALJ improperly relied on his own lay evaluation of records to disregard Dr. Kozicki's opinion. The facts in these cases, however, are distinguishable from those presented in this case.

In *Wallace*, one medical source submitted an opinion regarding the claimant's mental impairments and in that opinion concluded that the claimant was unable to perform substantial gainful activity.[51] The Third Circuit vacated the District Court's decision affirming an ALJ decision and remanded the case because the ALJ either "misread," "ignored," or rejected the medical source's wholly uncontradicted conclusions.[52] Like *Wallace*, the *Van Horn* case also involved an ALJ's rejection of entirely uncontradicted medical opinions about the extent of a claimant's emotional disabilities.[53] In *Fowler*, the Third Circuit remanded a case back to the

---

[51] *Wallace*, 722 F.2d at 1155.

[52] *Id.*

[53] *Van Horn*, 717 F.2d at 874 ("The ALJ could only have reached his conclusion by relying solely on his own non-expert observations at the hearing—in other words, by relying on the roundly condemned 'sit and squirm' method of deciding disability cases.").

Commissioner because an ALJ rejected three medical source opinions that a claimant's multiple sclerosis symptoms precluded her from engaging in substantial gainful employment beginning in late 1965 because the ALJ did not refer to any of the opinions and "merely summarized the medical reports related to the disability period prior to June 30, 1966 as giving 'no indication of severe and protracted disability prior to that date.'"[54] The Circuit reasoned that the ALJ's decision failed to observe the correct legal standard, was directly contrary to the evidence the physicians provided, and was not supported by any medical opinion.[55]

Unlike *Wallace*, the record in this case includes multiple medical source statements about Plaintiff's ability to do physical work-related activities, unlike *Van Horn* those statements assess varying degrees of physical limitation, and unlike *Fowler* the ALJ did not summarily mischaracterize those medical opinions. Dr. Kozicki's opinions about Plaintiff's ability to sit, stand, walk, lift, and carry are contradicted by other medical opinions. Moreover, the ALJ's RFC assessment falls within the range of medical opinions included in this record. Accordingly, we are not persuaded that the ALJ's decision was based entirely on his own non-expert evaluation.

---

[54] *Fowler*, 596 F.2d at 602.
[55] *Id.* at 602-603.

### C.    SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S FINDING THAT CRNP CYWINSKI'S MEDICAL OPINION WAS NOT PERSUASIVE

In his decision, the ALJ acknowledged that Plaintiff's right elbow lateral epicondylitis (tennis elbow), and right rotator cuff injury are medically determinable and severe. Plaintiff alleges that his elbow and shoulder impairments (as well as several other physical impairments) cause him significant pain that affects his daily life.

Regarding Plaintiff's elbow and shoulder impairments, the ALJ noted:

He experienced an injury to his right elbow diagnosed as right elbow lateral epicondylitis, and right rotator cuff injury (Exhibit 16F). The record shows the claimant received injections, physical therapy and bracing and eventually had surgery on his right elbow (Exhibit 16F/p. 15). He reported following the surgery that he had relief from forearm pain but no relief from elbow pain (Exhibit 16F/p. 15). He continued to be treated by Dr. Chertow, an orthopedic surgeon, and noted he was doing his home exercise program (Exhibit 16F/p. 9).

As of February 2020, the claimant reported he had received a right elbow topaz micro debridement and he was feeling much better than he did after his last surgery (Exhibit 16F/p. 6). Physical exam findings showed his range of motion was from 20 degrees of extension to 100 degrees of flexion, some decreased pronation and supination, and he was neurovascularly intact distally (Exhibit 16F/p. 6). By his next visit in March 2020, he was still feeling better and was noted to have full range of motion, flexion and extension, pronation and supination; he had some swelling around the elbow and noted some pain with extension (Exhibit 16F/p. 5). He continued to complain of some soreness, and he returned to physical therapy where he noted his pain increased following his therapy sessions (Exhibit 16F/p. 1). He was still showing full range of motion and had pain with resisted wrist extension and passive flexion at the wrist (Exhibit 16F/p. 1).

(Admin. Tr. 30-31; Doc. 9-2, pp. 31-32).

In October 2020, Plaintiff was sent to Certified Registered Nurse Practitioner Tara Cywinski for a consultative examination. During her examination, CRNP Cywinski noted Plaintiff had 4/5 strength in his upper right extremity and had a slightly reduced range of motion in his right shoulder on forward elevation and abduction. (Admin. Tr. 484, 490; Doc. 9-7, pp. 129, 136).[56] CRNP Cywinski assessed sitting, standing, lifting, and carrying limitations consistent with the performance of "light" work. Her opinion, in large part, suggests Plaintiff can engage in more strenuous physical activity than what is set forth in the ALJ's RFC assessment. Regarding Plaintiff's upper extremity limitations, however, CRNP Cywinski assessed that Plaintiff could never reach overhead with his right hand and could only occasionally reach in other directions with his right hand due to right shoulder and elbow pain. (Admin. Tr. 487; Doc. 9-7, p. 132).

Medical records from Plaintiff's treating sources dated after CRNP Cywinski's examination do not document significant complaints of pain or

---

[56] Both forward elevation and abduction were measured at 110 degrees, a "full" range of motion would be to 150 degrees. (Admin. Tr. 491; Doc. 9-7, p. 136).

limitation to Plaintiff's upper extremities.[57] Although Plaintiff reported some pain in May 2021, he had a good range of motion in his upper extremities.[58]

The ALJ did not include any specific reaching or push/pull limitation in the RFC and was not persuaded by CRNP Cywinski's opinion significantly limiting Plaintiff's ability to reach, and push/pull. The ALJ explained:

> The undersigned finds the opinion from Tara Cywinski, CRNP is not persuasive as it was a one-time exam and is not consistent with the treating physician records. The claimant is obese, has complaints of pain and is diagnosed with right elbow lateral epicondylitis, right rotator cuff injury, spondylosis of lumbosacral and cervical region, radiculopathy, herniated discs, spinal stenosis, and osteoarthritis. The record shows he received injections, underwent surgery, and continued to complain of some pain. The undersigned finds that to avoid exacerbation of his symptoms, the claimant is limited to sedentary work as outlined in the RFC above.

(Admin. Tr. 34-35; Doc. 9-2, pp. 35-36). Although the ALJ acknowledged the reaching and push/pull limitations, he did not articulate how he analyzed them.

Plaintiff argues that substantial evidence does not support the ALJ's persuasiveness analysis of CRNP Cywinski's opinion because: (1) the ALJ did not explain why the reaching or push/pull limitations were rejected; and (2) the ALJ did not discuss a September 2019 physical performance test. In response, the

---

[57] (Admin. Tr. 524-39; Doc. 9-7, pp. 169-184); (Admin. Tr. 640-653; Doc. 9-7, pp. 285-298); (Admin. Tr. 654-661; Doc. 9-7, pp. 299-306).
[58] (Admin. Tr. 633; Doc. 9-7, p. 278).

Commissioner argues that substantial evidence supports the ALJ's evaluation of the persuasiveness of CRNP Cywinski's opinion because the record clearly illustrates that Plaintiff's right arm symptoms significantly improved following a January 2020 surgery. In reply, Plaintiff argues that "[h]ad the ALJ considered the evidence from the other medical sources which was consistent with Ms. Cywinski's opinion as well as her own clinical findings on examination, . . . he properly would have found her opinion about Plaintiff's upper extremity limitations persuasive." (Doc. 12, p. 4).

We will evaluate Plaintiff's challenge to the ALJ's articulation of this assessment based on the principles set forth in Section III(D) of this Memorandum.

ALJs are required to articulate the persuasiveness of a source's opinion with enough detail and clarity to permit meaningful review. A persuasiveness analysis need not, however, analyze every limitation to be upheld.[59] Here, the ALJ acknowledged the reaching and push/pull limitations but did not analyze them. (Admin. Tr. 34; Doc. 9-2, p. 35). This omission does not require remand in this case. The ALJ's decision reviewed as a whole illustrates the basis for his conclusion. He

---

[59] *Wilder v. Kijakazi*, No. 4:22-CV-83, 2023 WL 2634040, at *8 (M.D. Pa. Mar. 24, 2023) (citing *Campbell v. Saul*, No. 1:20-CV-1715, 2021 WL 37478, at *16 (D.S.C. Jan. 5, 2021) ("it does not appear that 20 C.F.R. § 404.1520c and 416.920c require ALJs to separately consider each limitation in a medical source's opinion"); *B.C. v. Saul*, No. 20-1108-JWB, 2021 WL 411390, at *5 (D. Kan. Feb. 5, 2021)).

acknowledges that in the seven months before CRNP Cywinski's examination, Plaintiff was noted to have a full range of motion several times.[60] Moreover, he considered evidence that demonstrates that Plaintiff had a full range of motion and full strength in his upper extremities after CRNP Cywinski's examination.[61] This discussion is sufficient to permit meaningful review and demonstrates that the ALJ evaluated CRNP Cywinski's reaching and push/pull limitations. Therefore, we find no basis for remand due to the ALJ's failure to analyze these limitations in his persuasiveness finding.

An ALJ is not required to explicitly address every item in the administrative record. Remand may be appropriate, however, where an ALJ disregards substantial probative evidence that conflicts with his conclusion if the decision as a whole does not illustrate the basis for the ALJ's conclusion.[62] The ALJ's failure to discuss

---

[60] (Admin. Tr. 30, p. 31); (Admin. Tr. 603; Doc. 9-7, p. 248) (noting a full range of motion in Plaintiff's elbow on August 19, 2020 and assessing Plaintiff could lift fifteen pounds on the right side).

[61] (Admin. Tr. 31; Doc. 9-2, p. 32) (considering Exhibits 17F and 19F); (Admin. Tr. 524-39; Doc. 9-7, pp. 169-184); (Admin. Tr. 640-653; Doc. 9-7, pp. 285-298); (Admin. Tr. 654-661; Doc. 9-7, pp. 299-306); (Admin. Tr. 633; Doc. 9-7, p. 278).

[62] *Cotter*, 642 F.2d at 706 (acknowledging that [i]t is difficult to separate the obligation to explain why certain evidence has been excepted from the obligation to explain why other significant probative evidence has been rejected."); *Fargnoli*, 247 F.3d at 43 ("Where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such explanation is not

Plaintiff's September 2019 range of motion study in the context of CRNP Cywinski's reaching and push/pull limitations is not legal error. This study did not measure Plaintiff's shoulder strength or shoulder range of motion. Therefore, it is not probative of his shoulder limitations. It does measure his right elbow strength and range of motion. As to strength, however, it does not provide any context that would allow a lay evaluator to assess whether that strength was functionally diminished.[63] Furthermore, Plaintiff had surgery on his elbow three months later. Post-surgical records show gradual improvement in Plaintiff's elbow strength and range of motion as he recovered. Thus, this study is also not particularly probative

---

provided."); *Johnson*, 529 F.3d at 204 ("[A]n ALJ may not reject pertinent or probative evidence without explanation, but need not "cite all evidence a claimant presents, including evidence that is irrelevant to her case."); *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.").

[63] Regarding Plaintiff's elbow, the study measures the strength in Plaintiff's right elbow on flexion and extension but does not explain whether that strength is diminished from a functional perspective. (Admin. Tr. 359-367; Doc. 9-7, pp. 4-12). Plaintiff did exhibit a reduced range of motion in his right elbow (19% deficit on flexion, 3.33% deficit on extension, and 10% deficit on pronation). *Id.* CRNP Cywinski noted that Plaintiff had a full range of motion in his elbows. (Admin. Tr. 491; Doc. 9-7, p. 136).

as to Plaintiff's right elbow limitations. Remand is not required because this study is not probative, therefore the ALJ was not required to discuss it.

Accordingly, we find that no defect in the ALJ's evaluation of the right upper extremity limitations set forth in CRNP Cywinski's opinion that requires remand.

### D.    SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S RFC ASSESSMENT AND THE ALJ'S HYPOTHETICAL QUESTION INCORPORATED ALL OF PLAINTIFF'S CREDIBLY ESTABLISHED LIMITATIONS

Here, the ALJ supported his determination at step five by relying on the VE's response to a hypothetical question regarding the ability to perform work despite the presence of certain limitations. Plaintiff argues that substantial evidence does not support the ALJ's determination because that hypothetical question did not include all of Plaintiff's credibly established limitations. He alleges that the omitted limitations were the ones assessed by Dr. Kozicki and CRNP Cywinski.

In decisions where an ALJ relies on a VE to support his step five determination, substantial evidence does not support his conclusion where the VE's testimony was elicited using an incomplete or inaccurate hypothetical question.[64] A hypothetical question is inaccurate where it does not account for all a claimant's credibly established limitations. Not every limitation alleged, however, will be

---

[64] *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) ("the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations.").

credibly established. The Third Circuit articulated the following framework to determine whether a limitation is credibly established:

> First, limitations that are supported by medical evidence and are "otherwise uncontroverted in the record" *must* be included in the ALJ's hypothetical for us to rely on the VE's response to that hypothetical. [*Rutherford*, 399 F.3d at 554] However, where a limitation is supported by medical evidence, but is opposed by other evidence in the record, the ALJ has discretion to choose whether to include that limitation in the hypothetical. *Id.* This discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason. *Id.* Finally, the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible. *Id.*[65]

Here, Plaintiff implies that the ALJ improperly omitted sitting, standing, and walking limitations from Dr. Kozicki's opinion and improperly omitted reaching and push/pull limitations from CRNP Cywinski's opinion. The only basis offered by Plaintiff to support his argument that these limitations were credibly established is their presence in the opinions. As discussed in the preceding sections of this Memorandum, substantial evidence supports the ALJ's persuasiveness findings. Thus, they are effectively limitations not supported by credible medical evidence. Applying the correct framework, it is within the ALJ's discretion to exclude or include these limitations, and Plaintiff offers no basis to disturb that conclusion.

---

[65] *Zirnsak*, 777 F.3d at 614-15.

Accordingly, we find that ALJ's hypothetical question did not improperly omit these limitations, and therefore substantial evidence supports the ALJ's conclusion at step five.

## V.    CONCLUSION

Accordingly, for the foregoing reasons, the final decision of the Commissioner will be AFFIRMED. An appropriate order will be issued.

Date: October 21, 2024                    BY THE COURT

                                          *s/William I. Arbuckle*
                                          William I. Arbuckle
                                          U.S. Magistrate Judge